UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGO PHILLIPS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DOUBLE DOWN INTERACTIVE LLC, a Washington limited liability company, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. |

**NOTICE OF REMOVAL TO THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

Defendant Double Down Interactive LLC ("Defendant"), by its attorneys, Novack and Macey LLP, removes this action from the Circuit Court of Cook County, Illinois, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

**BRIEF BACKGROUND**

1. Defendant operates a game played over the internet called Double Down Casino ("Double Down"). Double Down can be played through Double Down's website, through Facebook or through an application ("app") downloaded onto mobile devices such as tablets and smart phones. The game is free to play at the website and through Facebook, and free to download onto a mobile device. Every user receives an initial allotment of free "chips" to use with the various versions of the game offered by Double Down. Return users receive additional free chips on a daily basis. Once a user's allotment of free chips is exhausted, he or she can choose to purchase additional chips, but there is no obligation to do so. The chips are non-transferrable and non-redeemable.

## THE STATE COURT COMPLAINT

2. On April 10, 2015, Plaintiff Margo Phillips ("Plaintiff"), individually, and on behalf of all others similarly situated, filed her Class Action Complaint and Demand for Jury Trial (the "Complaint") against Defendant in the Circuit Court of Cook County, Illinois. (A copy of the Complaint is attached as Exhibit A.)

3. Also on April 10, 2015, Plaintiff filed her Motion for and Memorandum In Support of Class Certification (collectively, the "Motion"), in the Circuit Court of Cook County, Illinois. As of the date of this Notice of Removal, the Motion had not been noticed for presentment to that court. (A copy of the Motion is attached as Exhibit B.)

4. On April 15, 2015, Defendant received, via personal service, among other documents, a copy of the Complaint, a copy of the Motion and a Summons. (Copies of the Summons and a Service of Process Summary Transmittal Form are attached as Exhibits C and D, respectively.)

5. The Complaint is styled as a class action. It states that, "Plaintiff Margo Phillips, on her own behalf and on behalf of a Class of similarly situated individuals, brings this lawsuit to recover their losses, as well as costs and attorneys' fees," and further alleges that Defendant has "illegally profited from thousands of Illinois consumers." (Compl. ¶ 4.)

6. The Complaint contains two Counts against Defendant. *First*, in Count I, it alleges that the games featured in Double Down are illegal "gambling devices" as defined by 720 ILCS 5/28-2(a), and that as a result of Defendant's operation of these gambling devices, Plaintiff and each member of the Class have lost money. (*Id.* ¶¶ 43-51.) The Complaint seeks an order (a) requiring Defendant to cease operation of Double Down, and/or (b) awarding the

putative class recovery of all lost monies, interest, and reasonable attorneys' fees, expenses and costs. (*Id.* ¶ 51.)

7.     *Second*, in Count II, the Complaint alleges that Defendant has been unjustly enriched by the money it received from users' voluntary purchase of Double Down chips as part of an "unlawful operation of casino games." (*Id.* ¶¶ 53-55.) The Complaint seeks full disgorgement and restitution of any money Defendant retained as a result of its "unlawful and/or wrongful conduct." (*Id.* ¶ 56.)

## BASIS FOR REMOVAL TO FEDERAL COURT

8.     The Complaint seeks to certify a class and to recover on behalf of a class. (*Id.* p. 18.) It states that "Plaintiff brings this action pursuant to 735 ILCS 5/2-801" -- which is titled "Prerequisites for the maintenance of a class action" -- and Plaintiff seeks to pursue her claims "on behalf of herself and a class of similarly situated individual[s]." (*Id.* ¶ 35.) The Complaint defines the "Class" as follows:

> **Class:** All individuals *domiciled in the State of Illinois* who lost $50 or more to Defendant through Double Down Casino.

(*Id.*; emphasis added.) The Complaint, in all respects, is a class action lawsuit.

9.     Accordingly, this action is subject to removal pursuant to the Class Action Fairness Act ("CAFA"). CAFA is "intended to expand substantially federal court jurisdiction over class actions; its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012). Its "primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (internal quotations omitted).

3

10. "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co.*, 133 S. Ct. at 1348 (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)). Each of the three requirements is met here.

I. **The Proposed Class Has More Than 100 Members**

11. Plaintiff admits that the Class has more than 100 members in multiple allegations in the Complaint. The Complaint states:

- "Defendant has illegally profited from *thousands of Illinois consumers*." (*Id.* ¶ 4; emphasis added.)

- "On information and belief, *thousands of consumers fall into the definition of the Class*." (Compl. ¶ 36; emphasis added.)

- "[T]housands of consumers have lost millions of dollars unwittingly playing Defendant's unlawful games of chance." (*Id.* ¶ 17.)

12. The Complaint also alleges that "over six million people play [Double Down] every month," and that "over 1.7 million consumers play [Double Down] everyday." (*Id.* ¶¶ 18, 36 n.14.)

13. Defendant's internal records further establish that any Class will have more than 100 members.[1]

14. Users who access Double Down through its website can either login using their Facebook profile or play as a guest. (Clelland Dec. ¶ 5.) A guest user's chips are not saved for subsequent use, and guests cannot buy chips once the free allotment is exhausted. (*Id.*) If a user

---

[1] *See* the Declaration of John Clelland ("Clelland Dec."), which is attached as Exhibit E.

4

logs in to Double Down through the Double Down website using a Facebook account or directly through Facebook, then Defendant assigns the user a unique identification number ("Double Down ID") linked to the user's Facebook account. (*Id.*)

15. Users who access Double Down through an app downloaded onto a mobile device also are given the option to log in using a Facebook account. (*Id.* ¶ 6.) If the user chooses to do so, a Double Down ID linked to the Facebook account is created. (*Id.*) If a mobile user chooses not to use Facebook to gain access, then Defendant creates a Double Down ID linked to the user's account with Apple or Google (depending on the operating system that was used to download the app and access the game). (*Id.*) Only one Double Down ID can be linked to each Facebook Account and mobile device. (*Id.* ¶¶ 5, 6.)

16. When a user accesses Double Down -- whether (a) as a guest, (b) through Facebook (via a desktop or laptop computer or a mobile device), or (c) through a mobile device without Facebook -- the IP address through which the user connected to the internet is recorded and stored in a database by Defendant. (*Id.* ¶ 7.) IP addresses identify the state from which the user accessed the internet. (*Id.*)

17. Defendant attempts to connect all of the IP addresses that it records and stores to the Double Down ID of the user who gained access through the subject IP address. In the end, Defendant can identify all of the IP addresses associated with each Double Down ID. (*Id.* ¶ 8.)

18. Defendant also can determine the amount of any money spent on any chips purchased by users associated with each Double Down ID. (*Id.* ¶ 9.)

19. Defendant recently reviewed all of the Double Down IDs associated with Illinois IP addresses and determined that from January 1, 2013 through March 31, 2015, there have been

17,902 people who (a) accessed Double Down from Illinois, and (b) spent at least $50.00 each on chips. (*Id.* ¶ 14.)

20. Even taking into consideration (a) the fact that some of the 17,902 people who used an Illinois IP address to access Double Down may not be Illinois residents, and (b) that there may be some other factors that might result in occasional errors connecting an IP address with the appropriate Double Down ID, there still are far more than 100 Illinois residents who spent $50 or more playing Double Down making them potential Class members. (*See id.* ¶ 15.)

## II. The Parties' Are Minimally Diverse

21. "Minimal diversity" exists where any member of the plaintiff class is a citizen of a state different from any defendant. *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)). Here, there is minimal diversity because Plaintiff and every member of the proposed Class is a citizen of Illinois and Defendant is a citizen of Nevada.

22. Plaintiff and each member of the Class is a citizen of Illinois. The Complaint states that Plaintiff is a citizen of Illinois. (Compl. ¶ 5.) Further, it defines the Class as "[a]ll individuals *domiciled* in the State of Illinois who lost $50 or more to Defendant through Double Down Casino." (*Id.* ¶ 35; emphasis added.)

23. Defendant is a limited liability company. (*See* Summons & Compl. ¶ 6.)

24. A limited liability company is "a citizen of every State of which any of the LLC's members is a citizen." *IP of A West 86th Street 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 686 F.3d 361, 363 (7th Cir.2012).

25. Defendant's sole member is International Game Technology ("IGT"). (*See* Compl. ¶ 10 n.2.) IGT is a corporation incorporated under the laws of the State of Nevada and

6

its principal place of business is Las Vegas, Nevada. (Clelland Dec. ¶ 3.) Because IGT is a citizen of Nevada, Defendant is a citizen of Nevada.

### III. The Amount In Controversy Exceeds $5,000,000

26. Under CAFA, the amount in controversy must exceed the sum of $5,000,000. 28 U.S.C. § 1332(d)(2)(A). The claims of the individual class members are aggregated in making this determination. § 1332(d)(6). "Class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class." § 1332(d)(1)(D).

27. The value of requested injunctive relief, potentially trebled damages and potentially recoverable attorneys' fees, should be included when calculating the amount in controversy. *See Keeling v. Esurance, Inc. Co.*, 660 F.3d 273, 275 (7th Cir. 2011); *Home Depot, Inc. v. Rickher*, No. 06-8006, 2006 WL 1727749, at *1 (7th Cir. May 22, 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-48 (7th Cir. 2005).

28. Here, the Complaint alleges that "Defendant has illegally profited from *thousands* of Illinois consumers," and that "*thousands* of consumers have lost *millions of dollars* unwittingly playing Defendant's unlawful games of chance." (Compl. ¶¶ 4, 17; emphasis added.)

29. The Complaint further alleges that, in 2014 alone, Defendant "saw revenues of over $240 million from the sale of online chips" through Double Down, "over 1.7 million consumers play [Double Down] everyday and spend over $700,000 buying chips to spend on wagers," and Defendant "sells millions of dollars of chips each year." (*Id.* ¶¶ 22, 36 nn.14 & 45.)

30. In the prayer for relief, the Complaint seeks, among other things: (a) compensatory damages in the amount of the loss suffered by Plaintiff and each member of the

7

Class; (b) trebled damages; (c) attorneys' fees; and (d) injunctive, statutory or declaratory relief as is necessary to protect the interests of Plaintiff and the Class. (*Id.* p. 18.)

31. The Complaint does not identify a specific amount in controversy. (*See id.* p. 18.)

32. Defendant's records indicate that the proposed Class may include as many as 17,902 persons. (*See* Section I above.)

33. In 2013, potential Class members spent approximately $7.1 million buying chips to play Double Down games. (Clelland Dec. ¶ 14.)

34. In 2014, potential Class members spent approximately $7.9 million buying chips to play Double Down games. (*Id.*)

35. In the first quarter of 2015, potential Class members spent approximately $2.1 million buying chips to play Double Down games. (*Id.*)

36. Thus, the amount in controversy associated with compensatory damages, disgorgement or restitution is approximately $17.1 million, and growing. (*See id.* ¶ 14.)[2] Further, the Illinois Loss Recovery Statute, 720 ILCS 5/28-8(a), on which Plaintiff predicates her claim in Count I, provides that a judgment may be trebled under certain circumstances. Assuming, without conceding, that trebling could apply in this case, it would increase the amount in controversy to more than $51 million.

37. Further, if Defendant is enjoined from offering Double Down within the State of Illinois, or a declaratory judgment order is entered holding that Double Down is an illegal "gambling device" in Illinois prohibiting Defendant from offering Double Down to Illinois residents, then Defendant's projected lost revenue per year, plus the cost to shut down Double

---

[2] Defendant calculated revenue generated by potential Class members dating back to January 1, 2013. However, the Class definition in the Complaint does not have any temporal limitations. (*See* Compl. ¶ 35.) Thus, the amount in controversy is actually greater than the amount identified in this Notice of Removal.

Down in Illinois, would be at least $7 million and possibly in excess of $8.4 million. (*See id.* ¶ 14.)[3]

38. By reason of the foregoing, the amount in controversy far exceeds the $5 million threshold under CAFA.

39. For the reasons stated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and removal of this action is proper under 28 U.S.C. § 1441(a).

## **PROCEDURAL REQUIREMENTS F*OR REMOVAL***

40. *All state-court process, pleadings, and orders* served upon Defendant are attached to this Notice of Removal as Exhibits A *through C, in accordance with* 28 U.S.C. § 1446(a).

41. This Notice of Removal is filed within 30 days of receipt by Defendant of the initial pleading and the Summons, and thus is timely filed under 28 U.S.C. § 1446(b)(1). (*See* Ex. D.)

42. Defendant is the sole defendant named in the Complaint. Because there are no additional defendants in this action, no consent to removal is necessary under 28 U.S.C. § 1446(b)(2)(A).

43. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly: (a) provide written notice of removal to Plaintiff and serve Plaintiff with a copy of this Notice of Removal; and

---

[3] Attorney's fees may be recoverable under Rule 23 of the Federal Rules of Civil Procedure. However, "because the existence of federal jurisdiction must be judged from the time of removal, 'only attorneys' fees incurred up to the time of removal could be included in the amount in controversy requirement.'" *Cicero-Berwyn Elks Lodge No. 1510 v. Phila. Ins. Co.*, No. 12 C 10257, 2013 WL 1385675, at *5 (N.D. Ill. Apr. 4, 2013) (quoting *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011)). Here, even without attorneys' fees the amount in controversy far exceeds $5 million. However, if the Court determines that the amount in controversy is less than $5,000,000, then Plaintiff's counsel should be required to produce their time records or other materials so that Defendant can determine the amount of attorney's fees that are at issue as of removal to analyze whether that amount puts the total amount in controversy over $5 million.

(b) file a copy of the written notice of removal with the Clerk of the Circuit Court of Cook County, Illinois.

44. Venue is proper in this Court pursuant to 28 U.S.SC. § 1446(a) because it is the district court of the United States for the district and division within which the action is pending.

WHEREFORE, Defendant hereby removes this action to the United States District Court for the Northern District of Illinois.

DOUBLE DOWN INTERACTIVE LLC

By: /s/ Eric N. Macey
One of Its Attorneys

Eric N. Macey (#3122684)
*emacey@novackmacey.com*
Christopher S. Moore (#6256418)
*cmoore@novackmaey.com*
Joshua E. Liebman
*jliebman@novackmacey.com*
Rebekah H. Parker (#6301907)
*rparker@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Doc. #726767

## CERTIFICATE OF SERVICE

Eric N. Macey, an attorney, hereby certifies that, on May 14, 2015, he caused a true and correct copy of the foregoing **Notice of Removal** to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing, and by email and U.S. mail to the individuals identified below. Parties may access this filing through the Court's CM/ECF system.

>Rafey S. Balabanian
>*rbalabanian@edelson.com*
>Benjamin H. Richman
>*brichman@edelson.com*
>Amir C. Missaghi
>*amissaghi@edelson.com*
>Courtney C. Booth
>*cbooth@edelson.com*
>EDELSON PC
>350 North LaSalle Street
>Suite 1300
>Chicago, IL 60654

on this 14th day of May, 2015.

/s/ Eric N. Macey