**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARGO PHILLIPS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-04301 |
| DOUBLE DOWN INTERACTIVE LLC, a Washington limited liability company, | ) ) ) | Honorable Edmond E. Chang |
| Defendant. | ) ) | |

**DEFENDANT DOUBLE DOWN INTERACTIVE LLC'S MEMORANDUM**
**OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Eric N. Macey (#3122684)
*emacey@novackmacey.com*
Christopher S. Moore (#6256418)
*cmoore@novackmaey.com*
Joshua E. Liebman
*jliebman@novackmacey.com*
Rebekah H. Parker (#6301907)
*rparker@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
*Attorneys for Defendant Double Down Interactive LLC*

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

    A.    The Parties ....................................................................................... 2

    B.    The Games ....................................................................................... 2

    C.    Plaintiff's Claims ............................................................................ 3

ARGUMENT ....................................................................................................... 4

I.    Applicable Law ......................................................................................... 4

    A.    Rule 12(b)(6) Standard ................................................................... 4

    B.    The ILRA Is A Seldom-Used Statute That Courts Strictly Construe ................... 4

II.    Counts I And II (ILRA) Should Be Dismissed With Prejudice ........................................ 5

    A.    Double Down Is Not A "Winner" ................................................... 6

        1.    Double Down Does Not Risk Its Own Money ......................... 6

        2.    Double Down's Revenue Is Based Upon The Number Of Chips Purchased, Not The Outcome Of Any Game ........................... 10

    B.    Plaintiff Did Not "Lose" Money To Double Down ............................... 11

    C.    The Games Do Not Constitute Gambling ........................................... 12

        1.    Virtual Chips Are Not "Things Of Value" ............................. 12

        2.    The Games Are Not A Machine Or Device ............................. 14

    D.    The Amended Complaint Does Not Adequately Plead The Loss ........................ 15

    E.    Count I Or Count II Should Be Dismissed As Duplicative ................................. 16

III.    Count III Fails To Allege A CFA Violation ........................................................ 17

        1.    The Games Do Not Offend Public Policy; They Are Not Immoral, Unethical, Oppressive, or Unscrupulous ........................... 18

        2.    No Substantial Injury ........................................................ 19

IV.    Count IV (Unjust Enrichment Claim) Is Deficient
Because Double Down Did Not Engage In Unlawful Gambling ..................................... 20

CONCLUSION ........................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Pages**

*Am. Safety Cas. Ins. Co. v. City of Waukegan*,
    07 C 1990, 2009 WL 855795 (N.D. Ill. Mar. 30, 2009) ........................................................ 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 4, 19

*Batson v. Live Nation Entm't, Inc.*,
    746 F.3d 827 (7th Cir. 2014) ..................................................................................... 18, 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 4

*Brownmark Films, LLC v. Comedy Partners*,
    682 F. 3d 687 (7th Cir. 2012) .......................................................................................... 8

*Ciszewski v. Denny's Corp.*,
    No. 09 C 5355, 2010 WL 2220584 (N.D. Ill. June 2, 2010) ............................................... 19

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ......................................................................................... 20

*Cooney v. Rossiter*,
    583 F.3d 967 (7th Cir. 2009) ......................................................................................... 19

*Council 31 of the AFSCME, AFL-CIO v. Quinn*,
    680 F.3d 875 (7th Cir. 2012) ........................................................................................... 4

*CSX Transp., Inc. v. Ala. Dept. of Revenue*,
    562 U.S. 277 (2011) ...................................................................................................... 15

*Enger v. Chi. Carriage Cab Co.*,
    14-CV-02117, 2014 WL 7450434 (N.D. Ill. Dec. 29, 2014) .............................................. 20

*Fahrner v. Tiltware LLC*,
    13-0227-DRH, 2015 WL 1379347 (S.D. Ill. Mar. 24, 2015) .................................... 4, 7, 8, 16

*George v. NCAA*,
    945 N.E.2d 150 (Ind. 2011) ........................................................................................... 14

*Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*,
    385 F.3d 737 (7th Cir. 2004) ......................................................................................... 17

*Hobbs v. Cappelluti*,
    899 F. Supp. 2d 738 (N.D. Ill. 2012) ............................................................................... 17

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    545 N.E.2d 672 (Ill. 1989) ........................................................... 20

*Humphrey v. Viacom, Inc.*, 06-2768 (DMC),
    2007 WL 1797648 (D.N.J. June 20, 2007) ................................. 6, 11, 12

*In re MasterCard Int'l Inc.*,
    313 F.3d 257 (5th Cir. 2002) ...................................................... 10

*Kremers v. Coca-Cola Co.*,
    712 F.Supp.2d 759 (S.D. Ill. 2010) ............................................. 19

*Kruse v. Kennett*,
    54 N.E. 965 (Ill. 1899) .............................................................. 7

*Langone v. Kaiser*,
    12 C 2073, 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013) ................... passim

*Manning v. Creative Headquarters, LLC*,
    No. 11-cv-02203 (N.D. Ill. Mar. 30, 2012) .................................. 10

*McCauley v. City of Chi.*,
    671 F.3d 611 (7th Cir. 2011) ...................................................... 4

*Moushon v. AAA Amusement, Inc.*,
    641 N.E.2d 1201 (Ill. App. 1994) ............................................... 5

*Norfleet v. Stroger*,
    297 Fed. App'x 538 (7th Cir. 2008) ............................................ 17

*Pearce v. Foote*,
    113 Ill. 228 (1885) ................................................................... 7

*People v. One Mechanical Device*,
    142 N.E.2d 98 (Ill. 1957) ..................................................... 12, 13, 14

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) .................................................... 4

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) .......................................... 17

*Reuter v. MasterCard Int'l, Inc.*,
    921 N.E.2d 1205 (Ill. App. 2010) ............................................. 9, 10

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ............................................. 18, 19, 20

*Sonnenberg v. Oldford Group*,
13-0344-DRH, 2015 WL 1379505 (S.D. Ill. March 24, 2015) ..................................... 7, 8, 16

*Tucker Firm, LLC v. Alise*,
11-CV-1089, 2012 WL 252790 (N.D. Ill. Jan. 25, 2012) ....................................................... 17

*Van Vliet v. Cole Taylor Bank*,
No. 10 CV 3221, 2011 WL 148059 (N.D. Ill. Jan. 18, 2011) ................................................. 17

*Vinson v. Casino Queen, Inc.*,
123 F.3d 655 (7th Cir. 1997) ............................................................................................... 5

*Wash. State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler*,
537 U.S. 371 (2003) ............................................................................................................. 15

*Yates v. U.S.*,
135 S. Ct. 1074 (2015) ......................................................................................................... 15

## Statutes

720 ILCS 5/28-2 ........................................................................................................... 12, 14, 15

720 ILCS 5/28-8 ............................................................................................................ 5, 6, 11, 16

815 ILCS 505/1 ..................................................................................................................... 17

## Other Authorities

http://www.doubledowncasino.com/ ..................................................................................... 3

Illinois Loss Recovery Act ...................................................................................................... 1

## Rules

Fed. R. Civ. Pro. 8(d)(2) ........................................................................................................ 17

Defendant Double Down Interactive LLC ("Double Down") submits this memorandum in support of its motion to dismiss the First Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl. __") of Plaintiff Margo Phillips.

## SUMMARY OF ARGUMENT

Double Down operates virtual games that resemble casino games, such as slots and blackjack, but with one very significant distinction -- users of Double Down's games cannot win or lose money. Instead, they can only "win" the opportunity to continue playing the games for free. Despite this key distinction, Plaintiff claims that Double Down's games constitute illegal gambling in which thousands of Illinoisans are unknowingly participating. Relying on a seldom-used gambling loss recovery statute, the Illinois Loss Recovery Act (the "ILRA"), Plaintiff alleges that all money spent by Illinois domiciliaries playing Double Down's games over the course of two years constitute "gambling losses" that Plaintiff, and a putative class she seeks to represent, are entitled to recover three times over.

Plaintiff's claim is unprecedented and meritless. It is unprecedented because no court in Illinois -- or any other jurisdiction in the United States -- has ever held that online games that reward players with free replays, and nothing more, constitute illegal gambling. Moreover, those courts that have considered the application of the ILRA to new online platforms have *all* construed the statute narrowly and dismissed such claims outright.

Plaintiff's claim is meritless because she cannot satisfy any of the elements necessary to state a claim under the ILRA. The statute permits only a "loser" to recover its gambling losses from the "winner." Yet, here, Plaintiff did not *lose* money, or anything of value, to Double Down. Further, the Double Down games are not a "gambling device" as defined by the ILRA because "free replays" -- which is all that can be won -- are not "things of value," and online

games are not "machines" or "devices." The Amended Complaint also lacks the necessary facts to state a claim, including the dates and amounts of Plaintiff's putative losses.

The complaint's Illinois Consumer Fraud Act ("CFA") claim must be dismissed because it is based on Plaintiff's ILRA claim, and Plaintiff does not plead oppressive conduct by Defendant or substantial injury suffered by Plaintiff. Further, because Plaintiff's unjust enrichment claim is premised upon the same allegedly wrongful conduct as her ILRA claim, it fails for all the same reasons.

## STATEMENT OF FACTS[1]

**A.    The Parties**

Double Down operates the "Double Down Casino," which exists only online. Users may access the Double Down Casino and play the games it offers (the "Games") through PCs and a variety of mobile devices. (Am. Compl. ¶ 18.)

Plaintiff alleges that she began playing the Games through her Facebook account "in or around January 2013." (*Id.* ¶ 38.) Plaintiff purports to bring her claims on behalf of herself and a class of Illinois individuals who "lost" $50 or more by playing the Games. (*Id.* ¶ 40.)

**B.    The Games**

Users, like Plaintiff, are provided free virtual "chips" that they can use in any of the Games, which are electronic versions of slot machines, roulette, black jack and the like. (*Id.* ¶¶ 1, 2, 24.) Users can play the Games as long as they have virtual chips with which to play. If they are successful in any particular play, they are rewarded with more virtual chips, *i.e.*, they are "granted . . . the immediate right to replay." (*Id.* ¶¶ 31, 32.) If users are unsuccessful in a

---

[1]    Well-pleaded facts taken from the Amended Complaint are assumed true solely for the purposes of this Motion. Defendant reserves the right to contest them for any other purpose.

particular play, the virtual chips they used to play the Games are expended, and they are not rewarded with more chips. (*Id.* ¶ 25.) Once their virtual-chip supply is depleted, users cannot continue playing the Games that day unless they choose to purchase additional virtual chips. (*Id.* ¶¶ 2, 26.)[2]

Double Down virtual chips cannot be used for anything except playing the Games. Double Down does not offer any cash for the virtual chips; nor does it provide a forum for others to do so. Indeed, the Double Down "Terms of Use" expressly prohibit the transfer or sale of virtual chips between individuals.[3] According to Plaintiff, users can "cash out" by listing their Double Down Casino accounts on some unidentified "secondary market" (*Id.* ¶¶ 3, 34), albeit in violation of the Terms of Use. Plaintiff also alleges that the outcome of a Game affects how Double Down's parent company, International Game Technology ("IGT"), accounts for "bookings" on its 10-K. (*Id.* ¶¶ 34-35.)

## C.    **Plaintiff's Claims**

Plaintiff's Amended Complaint asserts four claims. Counts I and II are brought pursuant to the ILRA and are essentially identical. They allege that the Games constitute illegal

---

[2]     Although the Amended Complaint does not acknowledge it, return users are given additional virtual chips on a daily basis. *See* Declaration of John Clelland ¶ 4, attached as Exhibit E to Defendant's Notice of Removal (Dkt. No. 1). Thus, users who expend all their virtual chips simply have to wait a day if they would like to continue to play the Games for free.

[3]     The "Terms of Use" require each user to agree that she will not, among other things, "[t]ransfer, sell, or re-sell" virtual chips. It further provides: "The transfer of Virtual Currency [*i.e.*, virtual chips] and Virtual Goods is strictly prohibited. Any attempt to do so is in violation of these Terms of Use and may result in a lifetime ban from the Services and possible legal action." (Double Down "Terms of Use," available at http://www.doubledowncasino.com/ (last accessed July 15, 2015)). A true and accurate copy of the Double Down "Terms of Use" is attached as Exhibit A to the Declaration of Rebekah Parker ("Parker Decl."), which is attached hereto as Exhibit 1. The Court can take judicial notice of the content of the "Terms of Use" because it is available online and, thus, readily verifiable. *E.g.*, *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 07 C 1990, 2009 WL 855795, at *8 (N.D. Ill. Mar. 30, 2009) (taking judicial notice of information found on corporate website), *aff'd* 678 F.3d 475 (7th Cir. 2012).

"gambling devices" through which Plaintiff "lost" $50 or more in "wagers." Count III is brought under the CFA. Count IV is based upon the same allegedly unlawful conduct as Counts I and II but styled as an unjust enrichment claim.

## ARGUMENT

## I. Applicable Law

### A. Rule 12(b)(6) Standard

The Court is well familiar with Federal Rule of Civil Procedure 12(b)(6) standards. We emphasize a few points. In reviewing the legal sufficiency of the Amended Complaint, the Court must apply the exacting standards established by the Supreme Court in the twin decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). These cases make clear that the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Council 31 of the AFSCME, AFL-CIO v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts must accept the well-pleaded *facts* as true, "but legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

### B. The ILRA Is A Seldom-Used Statute That Courts Strictly Construe

Plaintiff invokes a seldom-used statute in an attempt to recover up to treble damages from Double Down and have this Court declare as illegal Games that millions of users enjoy playing. Importantly, the ILRA is "penal" in nature and "must be strictly construed." *Fahrner v. Tiltware LLC*, 13-0227-DRH, 2015 WL 1379347, at *3 (S.D. Ill. Mar. 24, 2015) (citing *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013)), *appeal docketed*. The statute

"should not be interpreted to yield an unjust or absurd result contrary to its purpose" -- that is, to deter illegal gambling by using its recovery provisions as an enforcement mechanism. *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997).

Plaintiff purports to bring her claim pursuant to 720 ILCS 5/28-8 ("Section 28-8"), which allows anyone who loses $50 or more by "gambling" to recover that money from the "winner." Due to its narrow construction, Section 28-8 is rarely invoked. In fact, we are aware of only ten federal court decisions that have ever considered claims brought pursuant to it, and all held that the statute did not apply.[4] Its application by Illinois courts is no less circumscribed. The most recent state court appellate decision affirming an award under Section 28-8 was issued over 20 years ago and applied the statute to traditional video slot machines at a tavern that paid out money to winners. *Moushon v. AAA Amusement, Inc.*, 641 N.E.2d 1201 (Ill. App. 1994). All other state court appellate decisions considering Section 28-8 were issued before 1950, with the vast majority coming from the 19th century.

Not only is Plaintiff invoking an old and neglected statute, but she seeks to vastly expand its reach by applying it to a new class of games to which it has *never* been applied before -- online games that only reward players with "free play" and do not offer any monetary award. Such an expansion would be unprecedented, as no court has ever before applied the ILRA to this class of games. To the contrary, attempts in recent years to apply the ILRA to new types of online platforms have failed at the motion to dismiss stage *every single time*. This Court should likewise decline Plaintiff's invitation to expand the ILRA far beyond its original intent.

## II.    Counts I And II (ILRA) Should Be Dismissed With Prejudice

Counts I and II allege that Plaintiff "lost" -- and that Double Down "won" -- over $1,000

---

[4]    Six of these cases dismissing Section 28-8 claims are discussed in Section II.

through "gambling." Both counts fail for any one of the following reasons: (a) Double Down is not a "winner"; (b) Plaintiff did not "lose" anything; (c) the Games are not gambling devices; and (d) the counts are not adequately pled. Count I or Count II should also be dismissed because they are duplicative of each other. We address each of these arguments in turn.

### A.  Double Down Is Not A "Winner"

Plaintiff brings Count I pursuant to Section 28-8, which allows the "loser" to recover its gambling losses from the "winner." Plaintiff alleges that Double Down is a "winner" because it "participates in the games of chance and has a direct stake in the outcome of the gambling." (Am. Compl. ¶ 56.) Even assuming the Games constitute gambling (they do not for the reasons set forth in Section B *infra*), Double Down does not have a "direct stake" in their outcome as a matter of law because Double Down: (1) does not risk its own money; and (2) earns revenue based upon the number of chips purchased, not the outcome of any Game.

### 1.  Double Down Does Not Risk Its Own Money

Plaintiff's allegation that Double Down participates in the Games and has a "direct stake" in their outcome is wholly conclusory and belied by other allegations in the Amended Complaint, which make clear that Double Down does not pay any money to users who "win." (*Id.* ¶ 31, 35.) Because Double Down does not put any of its money at risk, it is not possible for it to be a "winner" or a "loser" under the ILRA.

"To suggest that one can be a winner without risking the possibility of being a loser defies logic and finds no support in the law." *Humphrey v. Viacom, Inc.*, 06-2768 (DMC), 2007 WL 1797648, at *9 (D.N.J. June 20, 2007) (dismissing claim under ILRA). Following this reasoning, courts repeatedly dismiss claims under the ILRA where the defendant did not put any of its own money at risk. For example, in *Langone v. Kaiser*, 12 C 2073, 2013 WL 5567587, at *2 (N.D. Ill. Oct. 9, 2013), plaintiff sued FanDuel, the owner of a website that hosts fantasy

sports games.  Plaintiff alleged that FanDuel was a winner because it required all participants to pay an entry fee and then took a "commission."  *Id.* at *1.  FanDuel argued that it was not a "winner" under the statute because it was not at risk.  The court agreed, explaining that "FanDuel risks nothing when it takes entry fees from participants in its fantasy sports games . . . .  FanDuel does not place any 'wagers' with particular participants by which it could lose money based on the happening of a future event[.]"  *Id.* at *6-7.  Because the element of "risk" was lacking, the court held that FanDuel "is not a 'winner' for purposes of the [ILRA.]"  *Id.* at 7.  The same is true here.  Double Down is not at risk of losing money based on the happening of a future event.

Similarly, in *Fahrner*, 2015 WL 1379347, at *7, and *Sonnenberg v. Oldford Group*, 13-0344-DRH, 2015 WL 1379505, at *5 (S.D. Ill. March 24, 2015), *appeal docketed*, the court held that hosts of online poker games that took a percentage of the amount bet, won or lost as their commission for hosting the games were not "winners."  In dismissing the ILRA claims with prejudice, the court found it significant that plaintiffs failed to plead that defendants "risked any of their own money."  *Id.*

In *Langone*, 2013 WL 5567587, at *1, *Fahrner*, 2015 WL 1379347, at *7, and *Sonnenberg*, 2015 WL 1379505, at *5, the courts further explained that merely charging an entry fee to participate in gambling did not subject one to liability because "Illinois courts have held that 'the winner and not the keeper of the house is liable to the loser,' unless the keeper of the house also *risks money* in the gambling activity."  (Emphasis added.)  Thus, the courts distinguished Illinois Supreme Court decisions, *Pearce v. Foote*, 113 Ill. 228 (1885), and *Kruse v. Kennett*, 54 N.E. 965 (Ill. 1899), which held that commodities future brokers were "winners" at a time when trading in futures was considered illegal gambling.  *Langone*, 2013 WL 5567587, at *6; *Fahrner*, 2015 WL 1379347, at *7; *Sonnenberg*, 2015 WL 1379505, at *5.  The courts

explained that the brokers were liable "not because they collected commissions on gambling activity, but because the brokers *participated in the risk* of the trade or 'wager.'" *Id.* (emphasis in original). The brokers "participated in the risk" because they could be "winners" or "losers" depending upon the happening of an event; if there were a loss, the client was to pay it to the brokers, and if there were a gain, the brokers were to pay it to the client. *Id.* Just as in *Langone*, *Fahrner*, and *Sonnenberg*, there is no allegation that Double Down risks any money when users play Games and, thus, it cannot be a winner or a loser.

Plaintiff attempts to avoid the inescapable conclusion that Double Down is not a winner by alleging that:

> Defendant faces the risk that the outcome of the spin [in the Games] will award the player a number of chips in excess of the player's wager, meaning Defendant must account for future plays, the loss of a purchase for additional chips, and the continued "deferral" of chips included in its "bookings."

(*Id.* ¶ 35.) In other words, Plaintiff admits that Double Down does not risk losing any money and, instead, alleges that Double Down "risks" that a user will win more virtual chips than it purchases. This allegation is sheer legerdemain, and it fails to save Plaintiff's claims. *First,* Plaintiff's allegation relies upon IGT's 10-K (*id.* ¶ 34), but nowhere does the 10-K say what Plaintiff alleges it says.[5] The 10-K does not account for "future plays" (whatever that means); it does not account for the "loss of a purchase for additional chips"; and it does not account for the "continued 'deferral' of chips included in its 'bookings.'" (*Id.*)

---

[5]     Because the Amended Complaint repeatedly relies upon IGT's 10-K (*id.* ¶¶ 21-22, 34, 37), Double Down can reference and attach it to its motion to dismiss without converting it into a motion for summary judgment. *E.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F. 3d 687, 690 (7th Cir. 2012). A true and correct copy of the 10-K cited by the Amended Complaint is attached to the Parker Declaration as Exhibit B.

*Second,* even assuming that Plaintiff's allegation about IGT's 10-K were true (it is not), any alleged connection between the outcome of the Games and Double Down's parent company's 10-K is far too tenuous to give Double Down a true "direct stake" in the outcome of the alleged gambling. For instance, in *Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1214 (Ill. App. 2010), the court considered whether a possible connection between gambling and credit card companies' revenues sufficed to make the credit card companies winners under the ILRA. The court held that it did not, explaining that even though the amount charged to a credit card (and, thus, the amount of interest collected by the credit card company) "can be affected by the outcome of the cardholders' forays into online gambling[,]" the "statutory definition of a 'winner' is [not] broad enough" to include defendants "who might realize an incidental benefit from a gambler's loss[.]" *Id.* Likewise, here, any putative "incidental" benefit or detriment allegedly realized by Double Down as a result of its parent company's alleged accounting practice is far too speculative and attenuated to implicate the ILRA, which must be "strictly construed." *Id.* at 1211.

*Third,* Plaintiff cannot escape the undeniable fact that the virtual chips Double Down is allegedly at risk of losing are not currency or a substitute for currency. Rather, virtual chips can only be used for amusement purposes, and "amusement" is not, as explained herein, a "thing of value" under long-settled Illinois law. Moreover, Plaintiff seeks the return of *money* she allegedly lost, not any allegedly lost virtual chips.

In sum, the case law makes clear that the mere fact that a party receives revenue from alleged gaming is not enough; in order to be a "winner" under the ILRA, a party must actually be at risk of *losing*. Because there are no allegations in the Amended Complaint that Double Down *risks money* in the Games, Double Down cannot constitute a winner as a matter of law.

## 2.  Double Down's Revenue Is Based Upon The Number Of Chips Purchased, Not The Outcome Of Any Game

Double Down also is not a winner because Double Down's revenue is determined *before* any alleged "gambling" takes place.  In *Reuter*, 921 N.E.2d at 1211, the court held that the fee charged by credit card companies for transferring money used in gambling did not make the companies "winners" under the ILRA because the fee was "based on the amount of chips purchased, not the outcome of any bets placed" and is determined "before any gambling takes place."  *See also In re MasterCard Int'l Inc.*, 313 F.3d 257, 262 (5th Cir. 2002) ("Because the Defendants completed their transaction with the Plaintiffs *before* any gambling occurred, that transaction cannot have [violated anti-gaming laws]." (Emphasis in original.))  Similarly, in *Manning v. Creative Headquarters, LLC*, No. 11-cv-02203 (N.D. Ill. Mar. 30, 2012),[6] the court dismissed a putative class action *qui tam* lawsuit under the ILRA (as well as similar statutes in other states) against operators of an online penny auction.  (Ex. C, p. 3.)  The court held that defendants did not constitute "winners" because participants in the auctions paid entry and bidding fees regardless of the outcome of the auction.  The payments were "certain to be lost" and "not dependent on the outcome of any action," so they "never hang in the balance[.]"  (*Id.*)  "Absolutely nothing is undetermined or contingent . . . and thus, the participants do not 'risk' losing their entry or bidding fees."  (*Id.*)

Likewise, here, Double Down's revenue is based upon the number of chips purchased before a user plays a Game, not the outcome of any Game.  Once a user buys chips, Double Down's revenue is fixed whether the user wins or loses the Game (or, for that matter, whether

---

[6]  A copy of *Manning*, which is not available on Westlaw or Lexis, is attached to the Parker Declaration as Exhibit C.

she plays at all).   Because Double Down's revenue is not "hanging in the balance," "undetermined," or "contingent" once chips are purchased, Double Down cannot be a "winner."

### B.   Plaintiff Did Not "Lose" Money To Double Down

For the same reasons that Double Down cannot be a "winner," Plaintiff cannot be a "loser."  Plaintiff alleges that she lost money and seeks the return of that money by way of this litigation.  (Am. Compl. ¶¶ 54, 66.)  The money that Plaintiff allegedly "lost" is the money that she spent on virtual chips so that she could play the Games.  (*Id.* ¶ 39.)  That money went to Double Down regardless of the outcome of the Games, as Plaintiff acknowledges that Double Down did not pay her any money for the chips that she won.  (*Id.* ¶¶ 31, 35.)  Because the money Plaintiff spent on virtual chips never "hung in the balance" as between herself and Double Down, it was not lost.  *See*, *e.g.*, *Humphrey*, 2007 WL 1797648, at *10.

In fact, the Amended Complaint makes clear that Plaintiff did not risk or lose any money playing the Games.  Rather, at best, Plaintiff alleges that:  (1) users risk *virtual chips* playing the Games "because they can obtain an outcome where they win no chips or fewer chips than their wager"; and (2) she "subsequently lost" the *virtual chips* that she purchased from Double Down.  (Am. Compl. ¶¶ 35, 39.)  This does not make Plaintiff a "loser" for purposes of the ILRA because Section 28-8 only allows Plaintiff to seek the return of "the money or other thing of value so lost[.]"  Plaintiff, however, does not seek the return of the *virtual chips* she lost.  Rather, she seeks the return of allegedly "lost monies."  (*Id.* ¶ 59.)[7]

More importantly, Plaintiff is not a "loser" because, to the extent she chose to pay money to continue playing the Games, she got what she paid for – the opportunity to play the Games without having to wait for the next opportunity to play for free.  It was, in essence, a payment

---

[7]      Plaintiff cannot amend the Amended Complaint to seek the return of any allegedly lost virtual chips because, as explained *infra*, virtual chips are not "things of value."

solely for entertainment -- not a "gambling" loss. *See*, *e.g.*, *Humphrey*, 2007 WL 1797648, at *10 ("in paying for the right to participate in the leagues and receive Defendants' services, participants simply do not 'lose' anything, and certainly suffer no cognizable 'gambling' loss"). For this reason, too, Counts I and II fail as a matter of law.

### C.     The Games Do Not Constitute Gambling

Even assuming that Double Down "won" money from Plaintiff (it did not), Counts I and II still fail because the Amended Complaint does not, and cannot, allege that she and Double Down were engaged in illegal gambling. Plaintiff alleges that Double Down engaged in illegal gambling because it operated the Games, which constitute "gambling devices." (Am. Compl. ¶ 50.) The ILRA defines "gambling device" as "any clock, tape machine, slot machine or other machines or device for the reception of money *or other thing of value*" that upon "chance or skill . . . is staked, hazarded, bet, won or lost." 720 ILCS 5/28-2(a) (emphasis added). Thus, to constitute a "gambling device": (1) money or some other thing of value must be wagered (2) using or upon the action of a machine or device. The Games fail to meet either requirement.

### 1.     Virtual Chips Are Not "Things Of Value"

Plaintiff alleges that virtual chips are things of value because Double Down sells millions each year; virtual chip winners are rewarded with free plays that would otherwise cost money; consumers can buy and sell accounts on the "secondary market"; and IGT accounts for the value of chips as "bookings" on its 10-K. (Am. Compl. ¶¶ 34, 64.) None of these allegations transform the virtual chips here into "things of value" under the ILRA.

The Illinois Supreme Court already considered -- and rejected -- the argument that "free plays" constitute "things of value." In *People v. One Mechanical Device*, 142 N.E.2d 98 (Ill. 1957), the trial court found that pinball machines were gambling devices and ordered their confiscation and destruction. The appellate court affirmed, holding, in relevant part, that

amusement and the right to free play or additional amusement were things of value. *Id.* at 100. The Illinois Supreme Court *reversed*. The Court explained that no prize was paid and that free play was *not* itself a "thing of value" under the ILRA:

> [A] pinball game is essentially an amusement game which can be, and frequently is, played for long periods of time with no reward to the player beyond the enjoyment of playing. A pinball game which does not pay out money or anything else of value and therefore on which money cannot be staked, hazarded, bet, won or lost, is not a gambling device and does not fall within the prohibition of the statute . . . .
>
> ***We are of the opinion that a free play is neither money, the equivalent of money, nor a valuable thing***. It is unrealistic to hold that the possibility of winning a greater or lesser amount of amusement is gambling because if it were, most amusement games would be barred by the statute. There is no evidence that the legislature ever intended so sweeping a prohibition.

*Id.* at 100-01 (emphasis added).

That same reasoning applies to the Amended Complaint. Just as in *One Mechanical*, a Double Down Casino users' *only* "reward" is "free play" -- *i.e.*, the ability to play the Game a little longer than he or she otherwise would. Just like the *One Mechanical* player, there is "no reward to the [users] beyond the enjoyment of playing," and there is no "thing of value" involved in the Games. Accordingly, the Games do not violate the ILRA.

The allegation that Double Down sells millions of virtual chips each year does not mean that chips are "things of value." The chips represent nothing more than the opportunity to play the Games -- which *One Mechanical* makes clear is not a "thing of value' under the ILRA. Indeed, pinball games undoubtedly generate revenue for the owner and operator, yet that was not enough to transform "free plays" into "things of value" in *One Mechanical.*

Nor does the alleged existence of some "secondary market" -- unaffiliated with Double Down and prohibited by Double Down's Terms of Use -- transform the chips into things of value. It is simply irrelevant whether a "secondary market" exists. *See George v. NCAA*, 945

N.E.2d 150, 159 (Ind. 2011) (holding that "[t]he speculative nature of the secondary market makes it an inappropriate consideration"), answering questions certified by the Seventh Circuit and adopted in *George v. NCAA*, 439 F. App'x 544 (7th Cir. 2011). In fact, if the existence of a secondary market somehow converted the virtual chips into things of value, the ILRA could be applied to almost anything capable of being bought and sold. This would be an absurd result that could not possibly have been intended by the Illinois legislature and that would run afoul of *One Mechanical's* teachings. *See Langone*, 2013 WL 5567587, at *2 (ILRA "should not be interpreted to yield an unjust or absurd result"). For instance, someone who wins a free replay at any game, such as pinball, could sell it to someone else waiting in line to play the game. If the ability to sell the replay on the secondary market rendered the pinball games illegal gambling, *One Mechanical's* holding would be eviscerated.

*Second*, the Amended Complaint fails to allege the existence of a "secondary market." It alleges only (at ¶ 34) that users can *list* their accounts for sale, but nowhere does the Amended Complaint allege that Plaintiff -- or anyone for that matter -- successfully *sold* such an account for cash. The difference is not mere semantics. Anyone can list anything for sale. But that does not mean there is a "market." For a market to exist, there must be a buyer *and* a seller, a listing *and* a sale. There are no such allegations here.

Finally, Plaintiff's allegations regarding alleged "bookings" on IGT's 10-K are, as shown above: (a) wrong; and (b) a smoke screen. As stated, Double Down risks no money each time a user plays a Game; nor does it pay money to any user. How its parent allegedly accounts for the revenue generated by the Games does not alter these facts.

### 2. The Games Are Not A Machine Or Device

A "gambling device" is a "clock, tape machine, slot machine or other machine[] or device for the reception of money or other thing of value . . . ." 720 ILCS 5/28-2(a). This definition

clearly refers to a physical, tangible object -- a device that can "receive" money like a slot machine. It does not encompass internet games which consist of intangible software and are played by users on their *own* devices, such as computers, tablets and cell phones.

Pursuant to the canon of statutory interpretation *ejusdem generis*, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates v. U.S.*, 135 S. Ct. 1074, 1086 (2015) (quoting *Wash. State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003)). "We typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless." *CSX Transp., Inc. v. Ala. Dept. of Revenue*, 562 U.S. 277, 295 (2011).

Consistent with the foregoing, in order for the general words "other machines or device for the reception of money or thing of value" in Section 28-2(a) to not render meaningless the specific words "clock, tape machine, slot machine," the general words must refer to something similar to the earlier three enumerated objects. Online games are not similar to tangible machines. Among other things, online games are comprised of intangible software and played on the user's own device. The Court should not interpret "gambling device" in such a way as to render the specific examples of a "clock, tape machine [or] slot machine" mere "surplusage." *Yates*, 135 S. Ct. at 1086. Further, as explained in Section I.B. above, the Court *must* construe the ILRA narrowly. Based upon the plain language of 720 ILCS 5/28-2(a), the absence of any contrary authority, and the Court's obligation to construe the statute narrowly, the Court should hold that the Games are not "gambling devices" within the meaning of the statute.

### D. The Amended Complaint Does Not Adequately Plead The Loss

Even if the Court finds that the ILRA applies to the Games (it should not), Counts I and II still are not adequately pleaded. "[A] plaintiff under § 8(a) must [] identify the winner, the

amount lost to that winner, and the date of loss -- something a loser should be able to do as they can identify who they were competing against with some particularity." *Langone*, 2013 WL 5567587, at *4, 8 n.5; *accord Fahrner*, 2015 WL 1379347, at *6 (plaintiffs had to plead "'who,' 'what,' and 'when' to sustain a cause of action, individually and on behalf of others, under the [I]LRA"); *Sonnenberg*, 2015 WL 1379505, at *5 (same). Indeed, the exact date and amount of "loss" must be pled with particularity due to the statutory requirements that (1) the loss exceed $50; and (2) occur "within 6 months[.]" 720 ILCS 5/28-8(a) & (b).

Here, Plaintiff alleges that, between January 2013 and January 2015, she wagered and lost over $1,000 playing Double Down Casino games. (Am. Compl. ¶ 39.) She further pleads that, by way of example, she paid $59 to Double Down for virtual chips in March 2015, and that she "subsequently lost" all the virtual chips at some unidentified time. (*Id.*) In *Fahrner*, 2015 WL 1379347, at *6, and *Sonnenberg*, 2015 WL 1379505, at *5, the court held that plaintiffs' claim that they gambled and lost at least $50 over a five-year period was insufficient under the ILRA. Similarly, Plaintiff only alleges generally that she lost over $1,000 over a 27-month period. While she lists one date on which she purchased virtual chips, she does not identify the date on which she "subsequently lost" the purchased chips. Nor does she identify any of the other dates of her alleged losses or the amount lost on each such date. Plaintiff's failure to allege these facts is fatal to her ILRA claims. *See Fahrner*, 2015 WL 1379347, at *6; *Sonnenberg*, 2015 WL 1379505, at *5; *Langone*, 2013 WL 5567587, at *4 (dismissing ILRA claim because plaintiff "failed to allege when and how much money" was lost).

### E.     Count I Or Count II Should Be Dismissed As Duplicative

Counts I and II are virtually identical, with two small exceptions. Count I alleges that Plaintiff and each member of the putative Class lost $50 or more from Double Down, while Count II makes the same allegation but adds that the losses occurred "within the six months

preceding the filing of the Complaint." (*Compare* Am. Compl. ¶ 54 *with* ¶ 66.) Count I also alleges that Double Down created the Double Down Casino "to lock consumers into continuous gambling sessions . . . [,]" while Count II does not. (*Id.* ¶ 55.) Other than these two small details, the counts are identical. Consequently, one of them should be dismissed as duplicative.

Plaintiff purports to plead Counts I and II "in the alternative." While Fed. R. Civ. Pro. 8(d)(2) permits a party to plead in the alternative, it does not apply to claims that are duplicative. *See*, *e.g.*, *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) (legal malpractice claim could not be re-characterized as a breach of fiduciary duty or a breach of contract claim to avoid dismissal because such claims would be duplicative); *Tucker Firm, LLC v. Alise*, 11-CV-1089, 2012 WL 252790, at *5 (N.D. Ill. Jan. 25, 2012) (dismissing duplicative claim). "One count may be dismissed as duplicative of another where 'the parties, claims, facts and requested relief are substantially the same.'" *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 771 (N.D. Ill. 2012) (quoting *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at *2 (N.D. Ill. Jan. 18, 2011)); *accord Norfleet v. Stroger*, 297 Fed. App'x 538, 540 (7th Cir. 2008). Here, Counts I and II allege the same violation of the same statute for the same reasons, and they seek the same remedy. (*Compare* Am. Compl. ¶ 59 *with* ¶ 70.) At least one of those counts should be dismissed as duplicative. *See*, *e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) (dismissing one of two duplicative statutory claims).

## III.  Count III Fails To Allege A CFA Violation

Count III is brought pursuant to the CFA, 815 ILCS 505/1, *et seq*. Its premise is that Double Down's treatment of Plaintiff was "unfair" because the Games "offend[] Illinois' public policy against unlawful gambling and were otherwise unethical, oppressive, unscrupulous." (Am. Compl. ¶ 78.) The premise fails.

17

The CFA protects consumers from deceptive *or* unfair business practices. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). Count III does not suggest that Double Down did anything deceptive; rather, it is predicated on the notion that the Games are "unfair." Thus, for this claim to survive, Plaintiff must plead facts supporting at least one of the following three criteria, namely, that the Games: (a) offend Illinois public policy; (b) are immoral, unethical, oppressive, or unscrupulous; or (c) cause substantial injury to consumers. *Batson*, 746 F.3d at 830. The Amended Complaint fails to plead facts establishing *any* of these criteria.

### 1.    The Games Do Not Offend Public Policy; They Are Not Immoral, Unethical, Oppressive, or Unscrupulous

Plaintiff does not and cannot plead facts supporting either of the first two criteria. The Games do not offend Illinois public policy against gambling, nor are they possibly immoral unethical or unscrupulous, because they do not, as shown above, constitute "unlawful gambling."

Nor are the Games otherwise immoral, unethical, oppressive, or unscrupulous. The relevant inquiry on this issue is whether Double Down's conduct is "so oppressive as to leave the consumer with little alternative except to submit to it." *Id.* at 833. Stated a little differently, this criterion is met only if a defendant's conduct is so coercive that it traps a consumer, who then has "little choice but to submit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). In contrast, this criterion is *not* met if a consumer can avoid the defendant's practice by seeking an alternative elsewhere or avoiding defendant's practice altogether (here, by playing other games or not playing the Games at all). *Batson*, 746 F.3d at 833 (oppression not shown when, among other things, plaintiff could have avoided purported oppressive conduct by choosing alternative form of entertainment); *Siegel*, 612 F.3d at 936 (same); *Batson v. Live Nation Entm't, Inc.*, No. 11 C 1226, 2013 WL 992641, at *5 (N.D. Ill. Mar. 13, 2013) (the criterion "is not satisfied where

a consumer can avoid the defendant's practice and obtain alternative products or services elsewhere"), *aff'd* 746 F.3d 827 (7th Cir. 2014).

Nothing in the Amended Complaint suggests, much less creates a reasonable inference, that Plaintiff had no choice but to play the Games, or that she could not have easily avoided playing the Games by seeking alternative forms of amusement. In fact, common sense and experience, which courts are encouraged to apply at the pleading stage, create a contrary inference -- Phillips easily could have chosen alternative forms of amusement or chosen not to play the Games at all. *Iqbal*, 556 U.S. at 663-64 (courts required to draw on "judicial experience and common sense" when evaluating inferences created by complaint); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (same).

### 2. No Substantial Injury

Plaintiff has suffered no injury whatsoever -- she received exactly what she paid for. That inconvenient truth aside, Plaintiff otherwise fails to plead substantial injury. Substantial consumer injury is pleaded only when a plaintiff pleads facts showing that she could not have reasonably avoided the injury. *Batson*, 746 F.3d at 833; *Siegel*, 612 F.3d at 935. Yet, as just demonstrated, Phillips fails to plead any such facts. Indeed, she easily could have avoided injury simply by seeking alternative forms of entertainment. *Batson*, 746 F.3d at 833; *see also Kremers v. Coca-Cola Co.*, 712 F.Supp.2d 759, 773 (S.D. Ill. 2010) (third criterion not satisfied where "the injury caused by Coca-Cola's trade practices . . . quite easily could have avoided by, for example, simply drinking a different soft drink or other beverage"); *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *4 (N.D. Ill. June 2, 2010) (similar).

\*          \*          \*

In sum, the Amended Complaint does not -- and cannot -- plead any of the three criteria to infer conduct that is unfair under the CFA. Count III should be dismissed with prejudice.

19

**IV.    Count IV (Unjust Enrichment Claim) Is Deficient
        Because Double Down Did Not Engage In Unlawful Gambling**

In order to state a claim for unjust enrichment, Plaintiff must allege that Double Down "unjustly retained a benefit to the plaintiff's detriment," and that Double Down's retention of the benefit "violates the fundamental principles of justice, equity, and good conscience."  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  Count III does neither.

*First*, the "injustice" alleged in Count IV is Double Down's alleged "unlawful operation of casino games."  (Am. Compl. ¶ 86.)  Accordingly, Count IV is premised upon the exact same alleged misconduct as Counts I and II.  Where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim -- and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (affirming dismissal of unjust enrichment claim under Illinois law); *accord Siegel*, 612 F.3d at 937; *Enger v. Chi. Carriage Cab Co.*, 14-CV-02117, 2014 WL 7450434, at *4 (N.D. Ill. Dec. 29, 2014).  For the reasons explained above, Double Down does not operate illegal casino games.  Thus, Count IV fails to allege any cognizable wrongful conduct to support an unjust enrichment claim.

*Second*, Count IV does not allege that Plaintiff suffered any detriment.  In order to state a claim for unjust enrichment, a plaintiff "must show a detriment -- and, significantly, a connection between the detriment and the defendant's retention of the benefit."  *Cleary*, 656 F.3d at 519.  In *Cleary*, the Seventh Circuit held that "it would *not* be unjust" as a matter of law for a defendant "to retain the money paid by a consumer for a product when this consumer was not deceived, would not have acted any differently had he known the truth about the product, was not hurt by the product, and was satisfied with the product[.]"  *Id.* (emphasis added).

All that Count IV alleges that could conceivably come close to being a detriment is the allegation that Plaintiff paid Double Down money for the purchase of additional virtual chips. (Am. Compl. ¶ 53.)  But, Plaintiff's payment to Double Down was for entertainment, and she got what she paid for -- the ability to play the Games without having to wait for another allocation of free chips.  Moreover, there are no allegations that Plaintiff was deceived into giving Double Down her money, the she would have behaved differently had she known certain information that was not provided to her, or that she was dissatisfied with her experience playing the Games. To the contrary, Plaintiff openly concedes that she enjoys playing virtual slot machines and is in the market to play them again.  (*Id*. ¶ 81.)  In short, Double Down's mere retention of Plaintiff's money in exchange for permitting her to play the Games -- without more -- was not detrimental to her.  For this reason, too, Count IV fails.

## CONCLUSION

For all of the foregoing reasons, Defendant Double Down Interactive LLC respectfully requests that the Court enter an Order:   (a) granting its Motion to Dismiss the Amended Complaint with prejudice; and (b) granting it such other and further relief as is appropriate in the circumstances.

Respectfully submitted,

DOUBLE DOWN INTERACTIVE LLC

By: ___ /s/ Rebekah H. Parker _____
      One of Its Attorneys

## <u>CERTIFICATE OF SERVICE</u>

Rebekah H. Parker, an attorney, hereby certifies that, on August 3, 2015, she caused a true and correct copy of the foregoing to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

   /s/ Rebekah H. Parker